# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

––––––––––––––––––––

CENTER FOR BIOLOGICAL DIVERSITY,

*Plaintiff-Appellant,*

v.

DAVID BERNHARDT, in his official capacity as Acting Secretary of the United States Department of the Interior; U.S. DEPARTMENT OF THE INTERIOR,

*Defendants-Appellees,*

PACIFIC LEGAL FOUNDATION; ALASKA OUTDOOR COUNCIL; BIG GAME FOREVER; KURT WHITEHEAD; JOE LETARTE; SAFARI CLUB INTERNATIONAL; NATIONAL RIFLE ASSOCIATION OF AMERICA, INC.; STATE OF ALASKA,

*Intervenor-Defendants-Appellees.*

––––––––––––––––––––

On Appeal from the United States District Court
for the District of Alaska

––––––––––––––––––––

## BRIEF FOR APPELLEES DAVID BERNHARDT AND THE U.S. DEPARTMENT OF THE INTERIOR

––––––––––––––––––––

JOSEPH H. HUNT
  *Assistant Attorney General*

BRYAN SCHRODER
  *United States Attorney*

MICHAEL S. RAAB
TARA S. MORRISSEY
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7261*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 353-9018*

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ................................................................. 1

STATEMENT OF THE ISSUES ..................................................................... 1

PERTINENT STATUTES .............................................................................. 1

STATEMENT OF THE CASE ......................................................................... 2

    A.    The Congressional Review Act .................................................... 2

    B.    The Refuges Rule ....................................................................... 5

    C.    Prior Proceedings ...................................................................... 8

SUMMARY OF ARGUMENT ...................................................................... 11

STANDARD OF REVIEW ............................................................................ 16

ARGUMENT ................................................................................................ 16

I.    THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFF'S CONSTITUTIONAL CLAIMS ............................................................. 16

    A.    Plaintiff Fails To State a Claim Under The Take Care Clause ................ 16

    B.    The District Court Properly Dismissed Plaintiff's Nondelegation Claim. ...................................................................................... 24

        1.    Plaintiff Lacks Standing To Challenge The Reenactment Provision, And Its Claim Is Not Ripe. ................................ 25

        2.    The CRA's Reenactment Provision Does Not Violate The Nondelegation Doctrine. ................................................ 30

II.    PLAINTIFF'S STATUTORY CLAIM FAILS FOR LACK OF JURSIDICTION AND ON THE MERITS. ........................................ 33

    A.    Plaintiff's Claim Should Be Dismissed For Lack Of Jursidiction. ........ 34

1.  The CRA Bars Judicial Review Of Plaintiff's Claim...................... 34

2.  This Court Lacks Jurisdiction To Review Plaintiff's Challenge To House And Senate Rules. ......................................... 39

B.  Plaintiff Fails To State A Valid *Ultra Vires* Claim. .................................... 43

C.  Plaintiff's Claim Misunderstands Relevant CRA Provisions. .................. 44

CONCLUSION ............................................................................................... 51

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                       **Page(s)**

*A.L.A. Schechter Poultry Corp. v. United States*,
295 U.S. 495 (1935) ................................................................. 31

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967) ................................................................. 29

*Alliance for the Wild Rockies v. Salazar*,
672 F.3d 1170 (9th Cir. 2012) ...........................................12, 21, 22

*American Power & Light Co. v. SEC*,
329 U.S. 90 (1946) .............................................................30, 33

*Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*,
138 S. Ct. 1865 (2018) ............................................................. 49

*Board of Governors of the Federal Reserve Sys. v. MCorp Fin., Inc.*,
502 U.S. 32 (1991) .............................................................38, 39

*In re Border Infrastructure Env'l Litig.*,
915 F.3d 1213 (9th Cir. 2019) ...............................................39, 43

*Burtch v. U.S. Dep't of Treasury*,
120 F.3d 1087 (9th Cir. 1997) ..................................................... 23

*California Sea Urchin Comm'n v. Bean*,
883 F.3d 1173 (9th Cir. 2018) ...............................................32, 33

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ................................................................. 26

*Clark v. City of Lakewood*,
259 F.3d 996 (9th Cir. 2001) ..................................................... 26

*Clark v. City of Seattle*,
899 F.3d 802 (9th Cir. 2018) ..................................................... 29

*Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*,
482 F.3d 1157 (9th Cir. 2007) .................................... 14, 40, 41, 42

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) ............................................................ 26

*Davis v. FEC,*
    554 U.S. 724 (2008) ............................................................ 27

*Dorsey v. United States,*
    567 U.S. 260 (2012) ..................................................12, 20, 21

*4805 Convoy, Inc. v. City of San Diego,*
    183 F.3d 1108 (9th Cir. 1999) ........................................... 27

*Franklin v. Massachusetts,*
    505 U.S. 788 (1992) ............................................................ 17

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.,*
    561 U.S. 477 (2010) ............................................................ 18

*Friends of Animals v. Jewell,*
    824 F.3d 1033 (D.C. Cir. 2016).....................................21, 22

*Get Outdoors II, LLC v. City of San Diego,*
    506 F.3d 886 (9th Cir. 2007) .........................................27, 28

*Hellon & Assocs., Inc. v. Phoenix Resort Corp.,*
    958 F.2d 295 (9th Cir. 1992) ............................................. 23

*INS v. Chadha,*
    462 U.S. 919 (1983) ............................................................ 19

*J.W. Hampton, Jr., & Co. v. United States,*
    276 U.S. 394 (1928) ..................................................13, 30, 32

*Kirtsaeng v. John Wiley & Sons, Inc.,*
    568 U.S. 519 (2013) ............................................................ 50

*Koons v. United States,*
    138 S. Ct. 1783 (2018) ....................................................... 49

*Leedom v. Kyne,*
    358 U.S. 184 (1958) ..................................................14, 39, 43

*Liesegang v. Secretary of Veterans Affairs,*
    312 F.3d 1368 (Fed. Cir. 2002) ......................................... 37

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) .................................................................. 25

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,*
   547 U.S. 71 (2006) .................................................................... 49

*Metropolitan Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.,*
   501 U.S. 252 (1991) ............................................................ 19, 20

*Metzenbaum v. FERC,*
   675 F.2d 1282 (D.C. Cir. 1982) (per curiam) ........................... 41

*Mississippi v. Johnson,*
   71 U.S. (4 Wall.) 475 (1866) ................................................... 17

*Mistretta v. United States,*
   488 U.S. 361 (1989) ..................................................... 13, 30, 32

*Montanans for Multiple Use v. Barbouletos,*
   568 F.3d 225 (D.C. Cir. 2009) ................................................. 35

*Murphy v. National Collegiate Athletic Ass'n,*
   138 S. Ct. 1461 (2018) ...................................................... 26, 27

*National Broad. Co. v. United States,*
   319 U.S. 190 (1943) ................................................................ 33

*National Park Hosp. Ass'n v. Department of Interior,*
   538 U.S. 803 (2003) ................................................................ 29

*In re National Sec. Agency Telecomms. Records Litig.,*
   671 F.3d 881 (9th Cir. 2011) .................................................. 30

*Natural Res. Def. Council, Inc. v. South Coast Air Quality Mgmt. Dist.,*
   651 F.3d 1066 (9th Cir. 2011) ................................................ 16

*New York v. American Elec. Power Serv. Corp.,*
   Nos. 2:04-cv-1098, 2:05-cv-360,
   2006 WL 1331543 (S.D. Ohio Mar. 21, 2006) ..................... 35, 36

*NLRB v. Noel Canning,*
   573 U.S. 513 (2014) ................................................................ 40

*NRDC v. Abraham*,
   355 F.3d 179 (2d Cir. 2004) ..................................................................... 37

*In re Operation of the Mo. River Sys.*,
   363 F. Supp. 2d 1145 (D. Minn. 2004), *aff'd in part, vacated in part, and
   remanded on other grounds* 421 F.3d 618 (8th Cir. 2005) .................. 36

*Pacific Mar. Ass'n v. NLRB*,
   827 F.3d 1203 (9th Cir. 2016) .................................................................. 43

*Panama Ref. Co. v. Ryan*,
   293 U.S. 388 (1935) .................................................................................. 31

*Russello v. United States*,
   464 U.S. 16 (1983) .................................................................................... 48

*Sandoz Inc. v. Amgen Inc.*,
   137 S. Ct. 1664 (2017) .............................................................................. 48

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) .............................................................................. 25

*Staacke v. U.S. Sec'y of Labor*,
   841 F.2d 278 (9th Cir. 1988) .............................................................. 39, 43

*Texas Sav. & Cmty. Bankers Ass'n v. Federal Hous. Fin. Bd.*,
   No. A 97 CA 421 SS, 1998 WL 842181 & n.15 (W.D. Tex. June 25, 1998) ............ 36

*Tugaw Ranches, LLC v. U.S. Dep't of Interior*,
   No. 4:18-cv-159, 2019 WL 938865 (D. Idaho Feb. 25, 2019) ...................... 36

*United States v. Ameren Mo.*,
   No. 4:11-cv-77, 2012 WL 2821928 (E.D. Mo. July 10, 2012) ...................... 35

*United States v. American Elec. Power Serv. Corp.*,
   218 F. Supp. 2d 931 (S.D. Ohio 2002) ..................................................... 36

*United States v. Ballin*,
   144 U.S. 1 (1892) ................................................................................ 40, 42

*United States v. Carlson*,
   Crim. No. 12-305, 2013 WL 5125434 (D. Minn. Sept. 12, 2013) ................ 35

*United States v. Reece*,
956 F. Supp. 2d 736 (W.D. La. 2013) ........................................................... 36

*United States v. Southern Ind. Gas & Elec. Co.*,
No. IP99-1692-C-M/S, 2002 WL 31427523 (S.D. Ind. Oct. 24, 2002) .................... 36

*Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*,
509 F.3d 1259 (10th Cir. 2007) ................................................................ 35

*Washington All. of Tech. Workers v. DHS*,
892 F.3d 332 (D.C. Cir. 2018) .................................................................. 35

*Whitman v. American Trucking Ass'ns*,
531 U.S. 457 (2001) .........................................................................31, 33

*Wileman Bros. & Elliott v. Giannini*,
909 F.2d 332 (9th Cir. 1990) ..............................................................30, 31

*Winter v. California Med. Review, Inc.*,
900 F.2d 1322 (9th Cir. 1989) .................................................................. 29

*Yakus v. United States*,
321 U.S. 414 (1944) ............................................................................ 33

*Yates v. United States*,
135 S. Ct. 1074 (2015) ......................................................................... 45

## Constitution:

U.S. Const. art. I, § 5, cl. 2 ...............................................................3, 14, 39

U.S. Const. art. II, § 3 .....................................................................11, 18, 24

U.S. Const. art. IV, § 3, cl. 2 .................................................................. 5

## Statutes:

Administrative Procedure Act, 5 U.S.C. § 706(2)(C) ........................................ 44

Alaska National Interest Lands Conversation Act of 1980,
Pub. L. No. 96-487, 94 Stat. 2371 ............................................................. 6

Congressional Review Act,
  Pub. L. No. 104-121, 110 Stat. 847 .......................................................... 2
    5 U.S.C. § 801(a)(1)(A).................................................................. 2, 46, 48
    5 U.S.C. § 801(a)(2)(A) ......................................................................... 46
    5 U.S.C. § 801(a)(3) ............................................................................... 4
    5 U.S.C. § 801(a)(4) ............................................................................... 4
    5 U.S.C. § 801(b)(1) ............................................................................... 2
    5 U.S.C. § 801(b)(2) .......................................................................... 3, 32
    5 U.S.C. § 801(d)(1) ...................................................... 4, 7, 15, 44, 47, 48
    5 U.S.C. § 801(d)(2) ............................................................................... 4
    5 U.S.C. § 801(f) .................................................................................... 8
    5 U.S.C. § 802(a) ................................................................................ 2, 4
    5 U.S.C. § 802(c) .............................................................................. 3, 46
    5 U.S.C. § 802(d)(2) ............................................................................... 3
    5 U.S.C. § 802(d)(3) ............................................................................. 49
    5 U.S.C. § 802(g) ........................................................................ 3, 14, 40
    5 U.S.C. § 804(3) ................................................................................... 2
    5 U.S.C. § 805 ................................................................ 5, 10, 13, 34, 37, 38
    5 U.S.C. § 806(a) ................................................................................. 21
    5 U.S.C. § 806(b) ................................................................................. 27
    5 U.S.C. § 807 ..................................................................................... 47
    5 U.S.C. § 808 ................................................................ 5, 14, 15, 45, 47, 48
    5 U.S.C. § 808(1) ................................................................................... 5

Joint Resolution,
  Pub. L. No. 115-20, 131 Stat. 86 (Apr. 3, 2017) ..................... 7, 16, 21, 34, 38

National Wildlife Refuge System Administration Act of 1966,
  Pub. L. No. 89-669, 80 Stat. 926.......................................................... 5

National Wildlife Refuge System Improvement Act of 1997
  Pub. L. No. 105-57, 111 Stat. 1252 ...................................................... 5
    16 U.S.C. § 668dd(a)(1).......................................................................... 5
    16 U.S.C. § 668dd(a)(4)(A)-(B) .............................................................. 6
    16 U.S.C. § 668dd(b)(5) .......................................................................... 6
    16 U.S.C. § 668dd(k) .......................................................................... 6, 32

Sex Offender Registration and Notification Act,
  34 U.S.C. § 20913(d)............................................................................ 31

12 U.S.C. § 1818(i)(1) (Supp. II 1990)......................................................... 38

28 U.S.C. § 1291 ....................................................................... 1

28 U.S.C. § 1331 ....................................................................... 1

28 U.S.C. § 1346 ....................................................................... 1

**Legislative Materials:**

162 Cong. Rec. H6160 (daily ed. Nov. 14, 2016) ................................7, 15, 48

162 Cong. Rec. S6339 (daily ed. Nov. 15, 2016) ............................... 7

H.R.J. Res. 69, 115th Cong. (Feb. 7, 2017) ....................................... 7

**Regulatory Materials:**

*Non-Subsistence Take of Wildlife, and Public Participation and Closure Procedures, on National Wildlife Refuges in Alaska*, 81 Fed. Reg. 52,248 (Aug. 5, 2016)............... 6, 7

82 Fed. Reg. 52,009 (Nov. 9, 2017)................................................. 8

U.S. Gov't Accountability Off., GAO Federal Rules Summary Listing (2016), http://www.gao.gov/fedrules/186189 .......................................... 7

**Other Authorities:**

Maeve P. Carey et al., Cong. Research Serv., R43992, *The Congressional Review Act: Frequently Asked Questions* (Nov. 17, 2016)................................. 3, 4

*Webster's Third International Dictionary* (1993)................................. 48

9A Charles Alan Wright & Arthur Miller, Federal Practice and Procedure (3d ed. 2008) ........................................... 49

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 28 U.S.C. § 1331 and § 1346. Tab 4, at 3.[1] The district court entered judgment for defendants on June 8, 2018. Tab 2. Plaintiff filed a notice of appeal on August 2, 2018. Tab 1. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the district court properly dismissed plaintiff's claim that the Department of the Interior violates the Take Care Clause by relying on a validly promulgated joint resolution of Congress.

2. Whether the district court properly dismissed plaintiff's claim that a provision of the Congressional Review Act, which prohibits an agency from issuing a rule that is substantially the same as a rule that Congress has disapproved, violates the nondelegation doctrine.

3. Whether the district court properly dismissed plaintiff's claim that the Department of Interior acts *ultra vires* by relying on the Congressional Review Act and a joint resolution adopted in accordance with the Act.

## PERTINENT STATUTES

Pertinent statutes are reproduced in the addendum to this brief.

---

[1] Citations to "Tab __" are to plaintiff's excerpts of record.

# STATEMENT OF THE CASE

## A.     The Congressional Review Act

In 1996, Congress enacted the Congressional Review Act (CRA or the Act), 5 U.S.C. §§ 801-808, as part of a package of regulatory reforms collectively known as the Small Business Regulatory Enforcement Fairness Act. *See* Pub. L. No. 104-121, § 251, 110 Stat. 847, 868. With certain exceptions, the Act provides that "[b]efore a rule can take effect, the Federal agency promulgating such rule shall submit" a report "to each House of the Congress and to the Comptroller General." 5 U.S.C. § 801(a)(1)(A); *see also id.* § 804(3) (defining the term "rule," primarily by reference to the definition of "rule" in the Administrative Procedure Act (APA)). The report must include "a copy of the rule," "a concise general statement relating to the rule, including whether it is a major rule," and its proposed effective date. *Id.* § 801(a)(1)(A).

Upon receipt of such a report, Congress has a period of time in which it may enact a joint resolution "disapprov[ing] the rule." 5 U.S.C. § 802(a). The joint resolution must include the following language: "That Congress disapproves the rule submitted by the _____ relating to _____, and such rule shall have no force or effect." *Id.*

If a joint resolution of disapproval passes both Houses of Congress, and is signed into law by the President, two consequences follow. First, and most immediately, the rule "shall not take effect (or continue)." 5 U.S.C. § 801(b)(1)

(Disapproval Provision).  Second, the rule "may not be reissued in substantially the same form," nor may a "new rule that is substantially the same as such a rule . . . be issued, unless the reissued or new rule is specifically authorized by a law enacted after the date of the joint resolution disapproving the original rule."  *Id.* § 801(b)(2) (Reenactment Provision).

Congress set forth various procedures for disapproving a rule in § 802, noting that the procedures are "an exercise of the rulemaking power of the Senate and House of Representatives," 5 U.S.C. § 802(g), consistent with the constitutional authority of each House of Congress to "determine the Rules of its Proceedings," U.S. Const. art. I, § 5, cl. 2.  The CRA modifies default legislative procedures to allow for expedited consideration of joint resolutions of disapproval.  For example, if a Senate committee has been considering a joint resolution for at least 20 days, 30 Senators may file a petition to discharge the committee and place the joint resolution on the calendar for consideration by the full Senate.  5 U.S.C. § 802(c).  In addition, Senate debate on the joint resolution is limited to 10 hours, *id.* § 802(d)(2), which, at least under current Senate rules, has the practical effect of preventing a filibuster.  *See* Maeve P. Carey et al., Cong. Research Serv., R43992, *The Congressional Review Act: Frequently Asked Questions* 1 (Nov. 17, 2016) (CRS Report); *see also* Rule XXII, Standing Rules of Senate.  These modified procedures are "deemed a part of the rules of each House," and either House may "change the rules . . . at any time."  5 U.S.C. § 802(g).

Typically, Congress has 60 days from the date of the agency's report to enact a joint resolution of disapproval. 5 U.S.C. § 802(a). A carryover provision, which is at issue in this case, allows additional time if an agency submits a report "in accordance with [§ 801(a)(1)]" within 60 days of the date that Congress adjourns a session. *Id.* § 801(d)(1). Under the carryover provision, Congress may continue to use the disapproval procedures in the next session of Congress; the 60-day clock begins to run in the new session of Congress from the 15th session day of the Senate or the 15th legislative day of the House. *Id.* § 801(d)(2). As a practical matter, "[t]his 'carryover' provision . . . ensure[s] that Congress will have the full periods contemplated by the act to disapprove a rule regardless of when it is received," even across multiple sessions of one Congress, or of two different Congresses. CRS Report 16.

If Congress does not enact a joint resolution of disapproval, a rule designated as a "major rule" generally takes effect 60 days after the date on which Congress receives the report submitted under § 801(a)(1) or the date on which the rule is published in the Federal Register, whichever is later. 5 U.S.C. § 801(a)(3). As a general matter, other rules "take effect as otherwise provided by law" after submission to Congress. *Id.* § 801(a)(4).

The CRA contains a specific exception to the effective dates specified in § 801. In a provision titled "[e]ffective date of certain rules," Congress provided that, "[n]otwithstanding section 801," certain rules "shall take effect at such time as the

Federal agency promulgating the rule determines." 5 U.S.C. § 808. As relevant here, rules subject to this exception include "any rule that establishes, modifies, opens, closes, or conducts a regulatory program for a commercial, recreational, or subsistence activity related to hunting, fishing, or camping." *Id.* § 808(1).

Section 805 of the CRA sets forth a broad judicial-review bar, providing that "[n]o determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805.

## B. The Refuges Rule

The Property Clause of the United States Constitution gives Congress the power to "make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2. Congress thus has constitutional authority to provide for the management of federal lands such as the National Wildlife Refuge System (the System), which includes wildlife refuges and other areas administered for the protection and conservation of fish and wildlife. *See* 16 U.S.C. § 668dd(a)(1).

Congress has delegated authority to the Secretary of the Interior to manage the System. *See* 16 U.S.C. § 668dd(a)(1). Congress provided guidelines for the Secretary's administration of the System in the National Wildlife Refuge System Administration Act of 1966 (the Administration Act), Pub. L. No. 89-669, § 4(a), 80 Stat. 926, 927, which was amended by the National Wildlife Refuge System Improvement Act of 1997 (the Improvement Act), Pub. L. No. 105-57, 111 Stat. 1252 (codified as

amended at 16 U.S.C. § 668dd).  As amended, the statute provides that Secretary

"shall," *inter alia*, "provide for the conservation of fish, wildlife, and plants, and their

habitats within the System," as well as "ensure that the biological integrity, diversity,

and environmental health of the System are maintained for the benefit of present and

future generations of America."  16 U.S.C. § 668dd(a)(4)(A)-(B).  Additionally, the

Secretary "may temporarily suspend, allow, or initiate any activity in a refuge in the

System if the Secretary determines it is necessary to protect the health and safety of

the public or any fish or wildlife population."  *Id.* § 668dd(k).  The Secretary is

authorized to issue regulations to carry out this statute.  *Id.* § 668dd(b)(5).

     The Alaska National Interest Lands Conversation Act of 1980 (ANILCA), Pub.

L. No. 96-487, 94 Stat. 2371, also governs national wildlife refuges in Alaska.

ANILCA established new national wildlife refuges and listed the purposes for which

each refuge was established, including to "conserve fish and wildlife populations and

habitats in their natural diversity."  *See, e.g., id.* § 302(1)(B)(i), 94 Stat. at 2385.

ANILCA provided that "[e]ach refuge shall be administered by the Secretary . . . in

accordance with the laws governing the administration of units of the National

Wildlife Refuge System, and this Act."  *Id.* § 304(a), 94 Stat. at 2393.

     In 2016, the Secretary of the Interior, through the Fish and Wildlife Service,

issued a regulation through notice-and-comment rulemaking that prohibited certain

"predator control" methods on national wildlife refuges in Alaska.  *See Non-Subsistence*

*Take of Wildlife, and Public Participation and Closure Procedures, on National Wildlife Refuges in*

6

*Alaska*, 81 Fed. Reg. 52,248, 52,248 (Aug. 5, 2016) (Refuges Rule).  In particular, the

Refuges Rule prohibited certain hunting and trapping methods that plaintiff alleges

have been allowed by the Alaska Board of Game.  *Id.* at 52,252; *See* Tab 4, at 8-9.

On October 5, 2016, near the end of the 114th Congress, Interior submitted its

CRA report for the Refuges Rule to the Comptroller General and each House of

Congress.[2]  In the opening weeks of the 115th Congress, pursuant to the CRA's

carryover provision, a joint resolution of disapproval of the Refuges Rule was

introduced in the House of Representatives.  H.R.J. Res. 69, 115th Cong. (Feb. 7,

2017); Tab 3, at 3; *see also* 5 U.S.C. § 801(d)(1).  The joint resolution passed the House

and Senate, and the President signed it into law as Public Law 115-20.  Tab 3, at 3-4.

The enactment—referred to here as the Joint Resolution—reads in its entirety:

> Providing for congressional disapproval under chapter 8 of title 5,
> United States Code, of the final rule of the Department of the Interior
> relating to "Non-Subsistence Take of Wildlife, and Public Participation
> and Closure Procedures, on National Wildlife Refuges in Alaska".

> *Resolved by the Senate and House of Representatives of the United States of America
> in Congress assembled,* That Congress disapproves the rule submitted by the
> Department of the Interior relating to 'Non-Subsistence Take of
> Wildlife, and Public Participation and Closure Procedures, on National
> Wildlife Refuges in Alaska' (81 Fed. Reg. 52247 (August 5, 2016)), and
> such rule shall have no force or effect.

Pub. L. No. 115-20, 131 Stat. 86 (Apr. 3, 2017).

---

[2] *See* U.S. Gov't Accountability Off., GAO Federal Rules Summary Listing
(2016), http://www.gao.gov/fedrules/186189; 162 Cong. Rec. S6339, S6346 (daily ed.
Nov. 15, 2016) (noting that rule was received Oct. 5, 2016); 162 Cong. Rec. H6160,
H6169 (daily ed. Nov. 14, 2016) (same).

Consistent with this congressional command, the Department of the Interior "has treated the Refuges Rule as though it had never taken effect." Tab 4, at 11; *see also* 5 U.S.C. § 801(f) ("Any rule that takes effect and later is made of no force or effect by enactment of a joint resolution under section 802 shall be treated as though such rule had never taken effect."). In November 2017—after plaintiff filed the instant action and the amended complaint in this case—Interior published a final rule to formally remove any text added by the Refuges Rule and to revert to the regulatory text in effect prior to the effective date of the Refuges Rule. 82 Fed. Reg. 52,009 (Nov. 9, 2017).

## C.    Prior Proceedings

In April 2017, plaintiff, the Center for Biological Diversity, filed this action to challenge the CRA and the Joint Resolution. Dkt. No. 1. Several individuals and entities—including Pacific Legal Foundation, Alaska Outdoor Council, Big Game Forever, Kurt Whitehead, Joe Letarte, Safari Club International, National Rifle Association of America, and the State of Alaska—intervened as defendants. Dkt. No. 83.

Plaintiff's amended complaint, filed in September 2017, raises constitutional and statutory claims against the CRA and the Joint Resolution and seeks declaratory relief. *See* Tab 4. Plaintiff claims that the CRA and the Joint Resolution violate the Take Care Clause and that the Reenactment Provision of the CRA—which prohibits issuing a rule that is substantially the same as a disapproved rule—violates the

nondelegation doctrine. *Id.* at 11-15. Plaintiff also asserts that Interior's reliance on the CRA and the Joint Resolution is "*ultra vires* and beyond Interior's authority" because the Refuges Rule allegedly was ineligible for disapproval under the carryover provision. *Id.* at 18.

The district court dismissed plaintiff's claims, granting motions filed by the federal government and intervenor-defendants. Tab 3, at 27. The court held that plaintiff failed to state a claim under the Take Care Clause, rejecting plaintiff's arguments that Congress cannot validly disapprove the Refuges Rule without "amend[ing] [Interior's] underlying statutory authority" and that Interior would violate the Take Care Clause if it "abides by" the Joint Resolution. *Id.* at 20, 22. The court observed that plaintiff "does not adequately explain how the Take Care Clause mandates that the executive branch should retain authority that Congress, with Presidential approval, withdrew from it through Public Law 115-20." *Id.* at 22.

Likewise, the district court rejected plaintiff's claim that, because Congress did not expressly amend Interior's underlying delegations of authority, the CRA and the Joint Resolution violate the requirements of bicameralism and presentment. Tab 3, at 18-19. As the court explained, "Public Law 115-20 was passed by both the House and Senate and submitted to the President for approval, as required by the CRA— which was also passed by both houses of Congress and signed into law by the President." *Id.* at 19. Plaintiff does not press this claim on appeal.

With respect to plaintiff's claim based on the Reenactment Provision of the CRA, which bars future rules that are "substantially the same as" a disapproved rule, the district court held that plaintiff lacks standing to challenge this provision because any injury is hypothetical and speculative. Tab 3, at 14-15. The court reasoned that plaintiff does not assert that Interior would otherwise promulgate a similar rule, and thus "[a]ny injury caused by [Interior's] inability to promulgate a substantially similar rule . . . is too speculative to constitute a concrete or imminent injury." *Id.* at 15. Moreover, the Disapproval Provision—not the Reenactment Provision—is the source of any injury based on the invalidation of the Refuges Rule. *Id.* Based on its conclusion that plaintiff lacks standing to challenge the Reenactment Provision, the court did not address plaintiff's claim that the provision violates the nondelegation doctrine.

Finally, the district court dismissed plaintiff's statutory claim, which alleges that Interior acted *ultra vires* by relying on a joint resolution of disapproval for a rule that, in plaintiff's view, was not eligible for disapproval under the CRA's carryover provision. Tab 3, at 22-23. The court addressed this claim on the merits, notwithstanding the CRA's judicial review bar, which provides that "[n]o determination, finding, action, or omission under [the CRA] shall be subject to judicial review." 5 U.S.C. § 805. The court reasoned that because plaintiff claims that Interior acted *ultra vires*, plaintiff "is not seeking review of action taken under the CRA"—but it failed to address whether plaintiff had adequately alleged that the

standards for an *ultra vires* claim are satisfied. Tab 3, at 23 n.89. The court also rejected the government's argument that plaintiff's claim presents a nonjusticiable challenge to congressional procedures, reasoning that plaintiff challenges "agency action taken pursuant to an official act of Congress, and not the application of an internal rule of Congress." *Id.* On the merits of plaintiff's statutory claim, the district court agreed with the government that plaintiff's argument rests on a misinterpretation of the CRA. *Id.* at 26-27. Relying on the plain text of the CRA, the court concluded that the Refuges Rule was properly subject to disapproval under the CRA's carryover provision, and therefore plaintiff failed to state a cognizable claim for relief. *Id.*

## SUMMARY OF ARGUMENT

The district court properly dismissed all of plaintiff's claims. The Joint Resolution is a validly promulgated law passed by both Houses of Congress and signed into law by the President. Together with the CRA, the Joint Resolution limits—and effectively amends—Congress's prior delegations of authority to Interior concerning the management of national wildlife refuges. Plaintiff's constitutional claims seek to disregard the Joint Resolution and the mandates of the CRA, and to instead enforce the underlying delegations of authority, as if they were unaffected by the Joint Resolution. Neither the Take Care Clause nor the nondelegation doctrine provides a colorable basis for plaintiff's approach. Plaintiff's statutory claim is likewise meritless, and should be dismissed on threshold jurisdictional grounds.

**I. A.** Plaintiff's Take Care Clause claim rests on the mistaken premise that a court is competent to supervise the manner in which agencies execute federal law on behalf of the President. Even assuming a court may do so, Interior has faithfully executed the Joint Resolution, which is just as much a "Law[]" as the enabling statutes that delegate authority to Interior. U.S. Const. art. II, § 3. As the district court noted, plaintiff's claim "seems to require selectively defining 'the laws of the United States'" to include some validly enacted statutes, but not others. Tab 3, at 22.

Plaintiff argues that Interior must continue to exercise its authority under the enabling statutes, without regard to the Joint Resolution disapproving the Refuges Rule, because "neither the Joint Resolution nor the CRA actually amend" the enabling statutes. Pl. Br. 19. But plaintiff cites no authority for the proposition that Congress must expressly amend an underlying delegation of authority in order to limit such authority. To the contrary, this Court has held that Congress may enact legislation that "amend[s] the law applicable to . . . agency action" without mentioning, much less expressly amending, the underlying statutes. *See Alliance for the Wild Rockies v. Salazar*, 672 F.3d 1170, 1175 (9th Cir. 2012). No "magical passwords" are required. *Dorsey v. United States*, 567 U.S. 260, 274 (2012).

**B.** Plaintiff's claim under the nondelegation doctrine fails for lack of Article III jurisdiction, as well as on the merits. Plaintiff challenges the CRA's bar on future rules that are "substantially the same" as a disapproved rule, but the district court correctly concluded that, "in the absence of any assertion that [Interior]" would

otherwise promulgate a substantially similar rule, any injury caused by the Reenactment Provision provision is unduly speculative. Tab 3, at 15. For the same reason, plaintiff's claim is also unripe.

Although the district court did not reach the merits, plaintiff also fails to state a plausible claim under the nondelegation doctrine. The Reenactment Provision limits the agency's previously delegated authority, and thus cannot plausibly be considered an "excessive delegation[]" of legislative power. *Mistretta v. United States*, 488 U.S. 361, 373 (1989). In any event, it provides "an intelligible principle" to guide the agency. *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928).

**II.** This Court also should affirm the dismissal of plaintiff's statutory claim, which contends that Interior's reliance on the Joint Resolution is *ultra vires* because Congress misapplied CRA procedures when it enacted the Joint Resolution. This claim fails for lack of jurisdiction and on the merits.

Plaintiff's claim is squarely foreclosed by the CRA's judicial-review bar, which provides that "[n]o determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. Plaintiff challenges a congressional "determination, finding, action, or omission" under the CRA—urging that Congress erred in applying the provisions of the CRA when it enacted the Joint Resolution— and therefore its claim is not "subject to judicial review." *Id.*

Additionally, plaintiff's claim is nonjusticiable because it is an impermissible challenge to House and Senate rules, which are constitutionally committed to each

House of Congress to "determine." U.S. Const. art I, § 5, cl. 2; *see also* 5 U.S.C. § 802(g) (explaining that CRA's disapproval provisions are "an exercise of the rulemaking power of the Senate and House of Representatives" and are "deemed a part of the rules of each House"). A claim "based on the asserted failure of Congress to comply with its own procedural rules" is "not subject to judicial review." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1171-72 (9th Cir. 2007).

Plaintiff also fails to state a valid *ultra vires* claim, as it cannot be *ultra vires* for Interior to comply with an unambiguous congressional command. Plaintiff does not allege that Interior violated a statutory duty, much less a "clear and mandatory" directive. *Leedom v. Kyne*, 358 U.S. 184, 188 (1958). Nor does plaintiff challenge the district court's conclusion that plaintiff failed to state a statutory claim under the APA. Tab 3, at 23, 27 n.95.

Finally, the district court correctly held that plaintiff's statutory claim should be dismissed because it rests on a misinterpretation of CRA provisions. Plaintiff mistakenly contends that § 808—a provision governing the "[e]ffective date of certain rules"—exempted the Refuges Rule from the requirement to submit a CRA report under § 801(a)(1)(A). 5 U.S.C. § 808. Based on plaintiff's belief that Interior was not *required* to submit a report for the Refuges Rule under § 801(a)(1)(A), plaintiff argues that Interior's report was not "submitted in accordance with" that provision, and thus the Refuges Rule was not eligible for disapproval in the next session of Congress. *See*

*id.* § 801(d)(1) (permitting review in a subsequent session of Congress for certain rules "for which a report was submitted *in accordance with subsection (a)(1)(A)*") (emphasis added). Plaintiff nevertheless contends that Congress could have applied disapproval procedures if it had acted in the same session of Congress.

Plaintiff's understanding of the CRA is flawed at each step. Its statutory argument turns on the erroneous belief that § 808 rules are exempt from the reporting requirement. But § 808 governs the "[e]ffective date" of rules, and does not create a wholesale exemption from the requirement to submit a CRA report. 5 U.S.C. § 808. Even if plaintiff were correct that § 808 rules are exempt, however, plaintiff errs in interpreting the carryover provision, which allows Congress to disapprove a rule submitted in a prior session of Congress. The carryover provision applies to rules "for which a report was submitted *in accordance with* subsection (a)(1)(A)"—not merely to rules for which a report *was required by* subsection (a)(1)(A), as plaintiff contends. Because Interior submitted a report for the Refuges Rule pursuant to § 801(a)(1) within the timeframe specified in the carryover provision, the rule was eligible for disapproval in the 115th Session of Congress. *See* 162 Cong. Rec. H6169 (daily ed. Nov. 14, 2016) (noting that report was submitted "pursuant to 5 U.S.C. 801(a)(1)(A)"). Plaintiff's claim should be dismissed for lack of jurisdiction and for failure to state a claim.

## STANDARD OF REVIEW

This Court reviews de novo a district court decision granting a motion to dismiss for lack of subject matter jurisdiction or failure to state a claim. *Natural Res. Def. Council, Inc. v. South Coast Air Quality Mgmt. Dist.*, 651 F.3d 1066, 1070 (9th Cir. 2011).

## ARGUMENT

## I. THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFF'S CONSTITUTIONAL CLAIMS.

The district court correctly dismissed plaintiff's claims that the CRA and the Joint Resolution are unconstitutional. Plaintiff fails to state a claim under the Take Care Clause, which does not require Interior to ignore Congress's unambiguous command that the Refuges Rule "shall have no force or effect." Pub. L. No. 115-20, 131 Stat. at 86. Moreover, the district court properly held that it lacks jurisdiction over plaintiff's challenge to the CRA's Reenactment Provision. In any event, the Reenactment Provision is not an unconstitutional delegation of authority, but rather serves as a limitation on authority previously granted to an agency.

### A. Plaintiff Fails To State a Claim Under The Take Care Clause.

Plaintiff alleges that the CRA and the Joint Resolution "unconstitutionally impinge[] upon the . . . obligation[] of an Executive Branch agency to 'take Care' that the laws be 'faithfully executed'" because they prevent Interior from exercising its authority under ANILCA, the Administration Act, and the Improvement Act. Tab 4,

at 11-15. Although the Joint Resolution and the CRA direct that the Refuges Rule "shall have no force or effect," plaintiff claims that Interior cannot rely on this directive because Congress did not specifically "amend[]" the text of ANILCA, the Administration Act, or the Improvement Act, *id.* at 12, 14, and thus "Interior's rulemaking authority under those statutes remains undisturbed," Pl. Br. 22.[3] Plaintiff's claim fails for several reasons.

**1.** Article II, Section 3 of the Constitution states that the President "shall take Care that the Laws be faithfully executed." As the Supreme Court has recognized, "the duty of the President in the exercise of the power to see that the laws are faithfully executed" "is purely executive and political," and is therefore not an appropriate subject for judicial intervention. *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 499 (1866); *see also Franklin v. Massachusetts*, 505 U.S. 788, 827-28 (1992) (Scalia, J., concurring in part and concurring in the judgment) ("The President's immunity from [declaratory and injunctive] relief is a functionally mandated incident of the President's unique office, rooted in the constitutional tradition of the separation of powers and supported by our history.") (quotation marks omitted). That duty includes the duty to supervise agencies in assisting the President to carry out this

---

[3] Plaintiff's amended complaint alleges that the Reenactment Provision violates the Take Care Clause, *see* Tab 4, at 14-15, but plaintiff's opening brief makes clear that its Take-Care challenge is focused on the Disapproval Provision and the Joint Resolution, Br. 18-26. In any event, plaintiff lacks standing to challenge the Reenactment Provision for the reasons discussed *infra* pp. 25-29, and any Take Care Clause claim fails on the merits for the reasons discussed *infra* pp. 17-24.

constitutional responsibility. *See Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 499 (2010).

Plaintiff's reliance on an "obligation[] of an Executive Branch agency to 'take Care' that the laws be 'faithfully executed,'" Tab 4, at 12, 14-15, would require a court to assume the constitutional responsibility to supervise agency heads that the Constitution instead assigns to the President alone. *See Free Enter. Fund*, 561 U.S. at 492-93 ("Article II confers on the President the general administrative control of those executing the laws. It is *his* responsibility to take care that the laws be faithfully executed.") (quotation marks omitted). A court cannot direct the actions of subordinate officers on the basis of the Take Care Clause without exercising authority that the Clause commits to the President himself rather than to courts. Plaintiff is asking the judiciary to step into the President's shoes, assuming a superintendence over the President's subordinates that Article II assigns to the President and to him alone.

**2.** As the district court correctly concluded, plaintiff's claim fails for the additional reason that Interior faithfully executed the Joint Resolution, a validly promulgated law that was passed by both Houses of Congress and signed by the President himself. The Joint Resolution, like the CRA, is a "Law[]" that the President "shall take Care" to "faithfully execute[]." U.S. Const. art. II, § 3. Indeed, there is no dispute that the Joint Resolution is such a "Law[]"—although plaintiff previously

asserted a violation of the requirements of bicameralism and presentment, the district court dismissed this claim, and plaintiff has abandoned it on appeal. Tab 3, at 18-19.

Plaintiff argues that Interior's treatment of the Refuges Rule is governed solely by the "Laws" of ANILCA, the Administration Act, and the Improvement Act, and is in no way affected by the more specific "Law[]" of the Joint Resolution, which provides that the Refuges Rule no longer has force or effect. The district court correctly rejected this view, which "seems to require selectively defining 'the laws of the United States'" to include some validly enacted statutes, but not others. Tab 3, at 22. As the court observed, plaintiff "does not adequately explain how the Take Care Clause mandates that the executive branch should retain authority that Congress, with Presidential approval, withdrew from it through [the Joint Resolution]." *Id.*

Plaintiff's reliance (Br. 25) on *INS v. Chadha*, 462 U.S. 919, 954-55 (1983), and *Metropolitan Washington Airports Authority. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 276 (1991), is misplaced. Plaintiff cites *Chadha* for the proposition that "Congress must abide by its delegation of authority until that delegation is legislatively altered or revoked," 462 U.S. at 955, but that principle supports the government, not plaintiff. Here, Congress did "legislatively alter[]" its prior delegations of authority to Interior by enacting the Joint Resolution, which disapproved the Refuges Rule. Unlike the congressional resolution in *Chadha*, in which a single House of Congress attempted to override an immigration decision that it had previously delegated to the Attorney General, *id.* at 952-58, the Joint Resolution was passed by both Houses of

Congress and signed by the President. *See* Tab 3, at 19 ("Here, Public Law 115-20 was passed by both the House and Senate and submitted to the President for approval, as required by the CRA—which was also passed by both houses of Congress and signed into law by the President."). Plaintiff's citation to *Metropolitan Washington Airports Authority* is likewise unavailing, because it merely stands for the proposition that Congress must exercise legislative power "in conformity with the bicameralism and presentment requirements." 501 U.S. at 276. Plaintiff no longer disputes that the Joint Resolution satisfies these requirements. *See supra* pp. 18-19.

**3.** Plaintiff acknowledges (Br. 19) that the "plain language" of the Joint Resolution "negates one specific . . . rulemaking: the Refuges Rule." Nevertheless, it urges that Interior is obligated to ignore the Joint Resolution because "neither the Joint Resolution nor the CRA actually amend" the statutes delegating authority to Interior. *Id.* The district court correctly rejected the notion that Congress must expressly amend these enabling statutes. Tab 3, at 21 n.84.

As the Supreme Court has recognized, "statutes enacted by one Congress cannot bind a later Congress, which remains free to repeal the earlier statute, to exempt the current statute from the earlier statute, to modify the earlier statute, or to apply the earlier statute but as modified." *Dorsey v. United States*, 567 U.S. 260, 274 (2012). No "magical passwords" are required: "Congress remains free to express any such intention either expressly or by implication as it chooses." *Id.* Here, Congress plainly limited its prior delegations of authority to Interior by specifying that

"Congress disapproves" the Refuges Rule and by providing that "such rule shall have no force or effect." Pub. L. No. 115-20, 131 Stat. at 86. Any authority that previously allowed Interior to promulgate the Refuges Rule was thus narrowed with respect to this particular agency action. Moreover, the Joint Resolution was enacted pursuant to the provisions "for congressional disapproval under chapter 8 of title 5, United States Code," *id.*, which in turn provide that the CRA's provisions "shall apply notwithstanding any other provision of law," 5 U.S.C. § 806(a). Nothing in the Constitution or elsewhere required Congress to say anything more. Nor does plaintiff explain what "magical passwords" it believes Congress should have invoked. *Dorsey*, 567 U.S. at 274.

Plaintiff's opening brief, like its district court briefing, cites "no authority" that "articulates a requirement that Congress cannot restrict an agency's rulemaking authority unless it also amends the underlying statute through which Congress granted that agency its authority in the first place." Tab 3, at 21 n.84; *see also* Pl. Br. 19-22. To the contrary, courts have held that Congress may "direct[] agency action" without expressly "amending the underlying statutes." Tab 3, at 21 n.84 (citing *Alliance for the Wild Rockies v. Salazar*, 672 F.3d 1170, 1174 (9th Cir. 2012) and *Friends of Animals v. Jewell*, 824 F.3d 1033, 1045 (D.C. Cir. 2016)). For example, in *Alliance for the Wild Rockies*, this Court upheld appropriations legislation that directed the Secretary of the Interior to reissue a rule that removed a population of gray wolves from the protections of the Endangered Species Act. 672 F.3d at 1171. A district court had

previously struck down the rule as a violation of the Endangered Species Act, and Congress stepped in to direct that "the Secretary of the Interior shall reissue the final rule . . . without regard to any other provision of statute or regulation that applies to issuance of such rule." *Id.* at 1172. This Court held that Congress had properly "amended the law applicable to the agency action"—even though the legislation did not mention, much less expressly amend, the Endangered Species Act—and thus rejected plaintiffs' argument that Congress impermissibly dictated the result of pending litigation. *Id.* at 1174-75.

Likewise, in *Friends of Animals*, the D.C. Circuit upheld similar appropriations legislation directing the Secretary of the Interior to reissue a rule allowing, with respect to certain animals, activities that the Endangered Species Act would otherwise prohibit. 824 F.3d at 1035-36, 1045. Once again, the legislation did not expressly mention or amend the Endangered Species Act, but instead provided that the Secretary "shall reissue the final rule . . . without regard to any other provision of statute or regulation that applies to issuance of such rule." *Id.* at 1036. Plaintiff argued that the legislation "ma[de] no change, not even the most minor addition or subtraction," to the underlying statutes, which "remain[ed] exactly as they were before" the legislation was enacted. *Id.* at 1045. Rejecting this argument as "meritless," the D.C. Circuit concluded that the legislation "amended the applicable law" and "obviously change[d] the reach of" the relevant provisions of the Endangered Species Act, which "*no longer apply*" to the particular animals at issue. *Id.*

Plaintiff acknowledges (Br. 25-26) that Congress may "implicitly amend[] [an] underlying law" by providing "Congressional direction [that] supplement[s] [a] statutory scheme," as it did in *Alliance for the Wild Rockies* and *Friends of Animals*. Plaintiff attempts to distinguish those cases by arguing that there, Congress "directed an agency to reissue a specific rule," whereas here "Congress merely negate[d] a particular rulemaking." Br. 26. But plaintiff offers no basis for crafting a constitutional distinction between congressional action that affirmatively directs issuance of a particular rule and that which negates a particular rule. Indeed, Congress frequently prohibits an agency from taking certain actions without amending the underlying statute. *See, e.g.*, *Burtch v. U.S. Dep't of Treasury*, 120 F.3d 1087, 1089-90 (9th Cir. 1997) (recognizing that funding prohibition, which did not expressly amend the underlying delegation of authority, "should be interpreted as a suspension of that part of [18 U.S.C. § 925(c)] which is affected").

As the district court noted, plaintiff also "acknowledges that there is no direct conflict between [the Joint Resolution] and the [underlying statutes], thus making it even less clear why repeal or amendment of those statutes is necessary." Tab 3, at 21 n.84. Even if there were a statutory conflict, however, the Joint Resolution would control because it is more specific and more recent in time. *See Hellon & Assocs., Inc. v. Phoenix Resort Corp.*, 958 F.2d 295, 297 (9th Cir. 1992) ("[I]n case of an irreconcilable inconsistency between [statutes,] the later and more specific statute usually controls the earlier and more general one."). Plaintiff contends (Br. 20 n.6) that the CRA's

"general language cannot overcome the specific grants of authority to Interior," and notes that the CRA preceded the Improvement Act. But plaintiff errs in failing to consider the Joint Resolution itself, which targets a specific rule and is later in time, and which is the legislative act that limited Interior's delegated authority.

In sum, the Joint Resolution—like the CRA—is a validly promulgated "Law[]," U.S. Const. art. II, § 3, and the district court correctly held that Interior's faithful adherence to these laws does not constitute a violation of any obligation under the Take Care Clause.

### B. The District Court Properly Dismissed Plaintiff's Nondelegation Claim.

The district court also correctly dismissed plaintiff's nondelegation claim. Plaintiff argues that the Reenactment Provision of the CRA—which bars future rulemaking that is "substantially the same" as a disapproved rule—is unconstitutional because it fails to provide Interior with an "intelligible principle" to guide its exercise of delegated authority in the future. Br. 27-31; *see also* Tab 4, at 15. The court properly concluded that plaintiff lacks standing to challenge the Reenactment Provision because any potential injury based on a hypothetical future rulemaking is "speculative" and "non-imminent." Tab 3, at 13. For similar reasons, plaintiff's claim is also unripe. In any event, even assuming that plaintiff has satisfied the requirements of Article III, it has failed to state a plausible claim for relief under the nondelegation doctrine.

### 1. Plaintiff Lacks Standing To Challenge The Reenactment Provision, And Its Claim Is Not Ripe.

**a.** The district court correctly dismissed plaintiff's challenge to the Reenactment Provision for lack of Article III standing. Tab 3, at 13-16. To establish Article III standing, a plaintiff must show that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Injury in fact, "the first and foremost of standing's three elements," requires a plaintiff to show that it "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1547-48 (alteration and quotation marks omitted). Here, plaintiff lacks standing because it has failed to adequately allege a concrete, non-speculative injury that flows from the Reenactment Provision.

Plaintiff alleges that the bar on "substantially the same" rulemaking makes it "difficult, if not impossible, for Interior to carry out its statutory obligations, as Interior cannot reasonably discern what Congressional mandates still apply," Tab 4, at 15, and that the bar prevents Interior from "address[ing] [the] risk to wildlife through subsequent rulemakings," Br. 46. This argument hinges on the purely hypothetical possibility that, at some point in the future, Interior would consider exercising its discretion to promulgate a rule that may be "substantially the same" as

the Refuges Rule, and that it would refrain from issuing such a rule because of the bar. As the district court explained, "in the absence of any assertion that [Interior]" would otherwise promulgate a substantially similar rule, any injury caused by the Reenactment Provision "is too speculative to constitute a concrete or imminent injury and is insufficient to confer Article III standing." Tab 3, at 15; *cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412 (2013) (holding that plaintiffs lack standing where claim is based on "speculat[ion] as to how [government officials] will exercise their discretion").

Plaintiff's responses do not pass muster. It first argues (Br. 42-43) that the district court erred by demanding that plaintiff demonstrate standing with respect to each provision that it challenges. Plaintiff claims that because it has standing to challenge the Disapproval Provision, it necessarily has standing to challenge the Reenactment Provision. But as the Supreme Court has explained—and as plaintiff acknowledges—"a plaintiff must demonstrate standing for *each claim* he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (emphasis added). In a challenge to a statute or ordinance, "a plaintiff may have standing to challenge some provisions of a law, but not others." *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001); *see also Murphy v. National Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1487 (2018) (Thomas, J., concurring) (noting general rule that "a plaintiff must demonstrate standing for each part of the statute that he wants to challenge"). Therefore, an injury based on one provision of the CRA does not establish standing to challenge every

provision of that statute. *See, e.g., Davis v. FEC*, 554 U.S. 724, 733-34 (2008) ("The fact that Davis has standing to challenge § 319(b) does not necessarily mean that he also has standing to challenge the scheme of contribution limitations that applies when § 319(a) comes into play.").

For example, in *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886 (9th Cir. 2007)—a case cited by plaintiff—this Court explained that a plaintiff challenging a sign ordinance must "show . . . that it meets the *Lujan* requirements for *each of the provisions* it wishes to challenge," even in a First Amendment overbreadth claim. *Id.* at 892 (emphasis added). This Court held that the plaintiff "ha[d] standing to challenge only those provisions that applied to it" and rejected the plaintiff's argument that "its injuries should be attributed to the entire sign code" such that "it has standing . . . to challenge . . . other provisions." *Id.*; *see also 4805 Convoy, Inc. v. City of San Diego*, 183 F.3d 1108, 1113 (9th Cir. 1999) (holding that plaintiff had standing to challenge certain provisions of a city ordinance, but not others).[4]

Plaintiff maintains that it brings "just one claim challenging the CRA" because it raises all constitutional challenges against the CRA in one section of its amended complaint titled "Claim Two." Br. 42-43 (citing Tab 4, ¶¶ 58-74). But Article III

---

[4] The CRA has a severability provision (5 U.S.C. § 806(b)), but this Court need not consider it at this stage, as "[t]he severability doctrine comes into play only *after* the court has resolved" the threshold question of "whether the plaintiff has standing to challenge" a particular provision. *Murphy*, 138 S. Ct. at 1487 (Thomas, J., concurring); *see also* Pl. Br. 45 n.13 (noting that severability goes to "[t]he question of relief").

jurisdiction does not turn on the formatting of the complaint. The allegations of Claim Two make clear that plaintiff challenges two distinct provisions of the CRA, raising two constitutional theories. *See* Tab 4, at 13-15; *see also* Pl. Br. 17-31. Regardless of how plaintiff casts its claims, plaintiff's standing to challenge one provision of the CRA does not confer standing to challenge other provisions. *See Get Outdoors*, 506 F.3d at 891-92.

Second, plaintiff asserts that it is "injured by the continuing lack of protections for wildlife that [its] members enjoy observing on national wildlife refuges in Alaska." Br. 43; *see also* Tab 4, at 4-5. It claims that the invalidation of the Refuges Rule "might" lead to aggressive predator control practices, which "would lead to fewer predators and reduced opportunities to encounter and otherwise enjoy such wildlife on Alaska refuges." Tab 4, at 4-5. But any cognizable injury relating to these "reduced opportunities" is traceable to the Disapproval Provision and the Joint Resolution, not the Reenactment Provision. *See* Tab 3, at 15 ("[T]he Disapproval Provision—and not the Reenactment Provision—is the source of CBD's alleged injury."). As discussed above, any asserted injury based on the Reenactment Provision's bar on future rulemaking is abstract and hypothetical. Nor is there any basis to assume that a decision invalidating the Reenactment Provision—which, as plaintiff acknowledges, would merely "reaffirm[]" Interior's "authority" to promulgate a similar rule—would actually lead to more "opportunities to encounter and otherwise enjoy such wildlife," such that plaintiff's asserted injury would be redressed by a

favorable decision.  Tab 4, at 5; *see also* Tab 3, at 16 ("Without a stated intention by [Interior] to reinstate the same or substantially similar rule, the invalidation of the Reenactment Provision would not redress [plaintiff's] alleged injury.").

**b.**  Although the district court did not reach the question of ripeness, plaintiff's lack of standing confirms that its claim is also unripe.  *See Clark v. City of Seattle*, 899 F.3d 802, 809 (9th Cir. 2018) ("[C]onstitutional ripeness is often treated under the rubric of standing because 'ripeness coincides squarely with standing's injury in fact prong.'"); Tab 3, at 13 n.58 (discussing relationship between standing and ripeness). As explained above, any injury based on the Reenactment Provision is abstract and hypothetical.  For the same reason, plaintiff's challenge to that provision is not ripe, and would risk "entangling [the judiciary] in [an] abstract disagreement[]" over the authority of Interior to promulgate a rule that it may never even consider.  *National Park Hosp. Ass'n v. Department of Interior*, 538 U.S. 803, 807 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)); *see also Winter v. California Med. Review, Inc.*, 900 F.2d 1322, 1325 (9th Cir. 1989) ("The ripeness doctrine serves . . . 'to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'") (quoting *Abbott Labs.*, 387 U.S. at 148-49).

## 2. The CRA's Reenactment Provision Does Not Violate The Nondelegation Doctrine.

Even assuming that the district court had jurisdiction over plaintiff's challenge to the Reenactment Provision, this Court should affirm the dismissal of this claim because plaintiff has failed to state a plausible violation of the nondelegation doctrine. The nondelegation doctrine provides that Congress may delegate to the executive branch the authority to implement enacted legislation, so long as it "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform." *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928). To provide an "intelligible principle," Congress need only "clearly delineate[] the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Mistretta v. United States*, 488 U.S. 361, 372-73 (1989) (quoting *American Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946)). This test recognizes that "Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Id.* at 372.

As this Court has explained (and as plaintiff acknowledges, *see* Br. 27 n.8), the Supreme Court "has only twice invalidated legislation under this doctrine, the last time being seventy-five years ago." *In re National Sec. Agency Telecomms. Records Litig.*, 671 F.3d 881, 895 (9th Cir. 2011); *see also Wileman Bros. & Elliott v. Giannini*, 909 F.2d 332, 337 n.9 (9th Cir. 1990) (*Wileman Bros.*) (noting the "virtual absence of cases striking down a delegation"). Summing up its own record, the Supreme Court has

observed that "[i]n the history of the Court we have found the requisite 'intelligible principle' lacking in only two statutes," noting that one statute "provided literally no guidance for the exercise of discretion," while the other "conferred authority to regulate the entire economy on the basis of no more precise a standard than stimulating the economy by assuring 'fair competition.'" *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 474 (2001); *see also Panama Ref. Co. v. Ryan*, 293 U.S. 388 (1935); *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935).[5] This Court has thus explained that, "[w]ith respect to federal agencies, only very broad, literally standardless grants of legislative power will offend the Constitution." *Wileman Bros.*, 909 F.2d at 337 n.9.

As an initial matter, plaintiff fails to state a plausible claim under the nondelegation doctrine because the Reenactment Provision is not a delegation of authority, but rather a limitation on previously delegated authority. *See Whitman*, 531 U.S. at 472 ("In a delegation challenge, the constitutional question is whether the statute has delegated legislative power to the agency."); *Wileman Bros.*, 909 F.2d at 337 n.9 (noting that nondelegation doctrine applies to "grants of legislative power").

---

[5] Although the Supreme Court is considering a nondelegation challenge to a provision of the Sex Offender Registration and Notification Act (SORNA), 34 U.S.C. § 20913(d), in *Gundy v. United States*, No. 17-6086 (oral argument held Oct. 2, 2018), the outcome of that case has no direct bearing on this case. The question in *Gundy* is whether Congress may delegate to the Attorney General the discretion to specify the applicability of SORNA's registration requirements to pre-SORNA offenders. This case, by contrast, does not concern a challenge to a delegation of authority, but rather a limitation on authority that Congress previously delegated.

Plaintiff does not challenge the underlying delegations of authority to Interior—indeed, it argues that Interior must be permitted to "faithfully execute" such authority. Br. 24-25. A statute that limits an otherwise proper delegation of authority is in no way an "excessive delegation[]"of legislative power. *Mistretta*, 488 U.S. at 373.

Even assuming that the nondelegation doctrine applies, the Reenactment Provision easily satisfies the "intelligible principle" test. *J.W. Hampton, Jr.*, 276 U.S. at 409. The Reenactment Provision is highly specific, in that it is directed to a particular rule that has been disapproved by Congress. As applied to the Refuges Rule, the Reenactment Provision leaves no doubt that absent additional congressional action, Interior shall not "reissue[]" the Refuges Rule "in substantially the same form," nor may it "issue[]" "a new rule that is substantially the same as" the Refuges Rule. 5 U.S.C. § 801(b)(2).

Plaintiff complains that the Reenactment Provision imposes a "generic," "vague bar on substantially similar rulemaking." Br. 28-29. But Interior routinely exercises its expertise in applying similar standards, including the authority to "protect the health and safety of the public or any fish or wildlife population." 16 U.S.C. § 668dd(k). The "intelligible principle" test does not demand exacting specificity. Rather, the Supreme Court's application of this test reflects "a practical understanding that in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Mistretta*, 488 U.S. at 372; *see also California Sea*

*Urchin Comm'n v. Bean*, 883 F.3d 1173, 1184 (9th Cir. 2018) ("[A]n intelligible principle can still be somewhat vague without offending the Constitution.") (citing *Whitman*, 531 U.S. at 473-74). Indeed, courts routinely uphold broad language under this test. *See, e.g.*, *Whitman*, 531 U.S. at 472-75 (upholding statute that required the Environmental Protection Agency to establish "ambient air quality standards" that, based on certain criteria, are "requisite to protect the public health"); *American Power & Light Co.*, 329 U.S. at 104 (upholding statute directing the Securities and Exchange Commission to ensure that corporate structures are not "unduly or unnecessarily complicate[d]" and do not "unfairly or inequitably distribute voting power among security holders"); *Yakus v. United States*, 321 U.S. 414, 420-27 (1944) (upholding statute giving an agency administrator power to set commodities prices at a level that "will be generally fair and equitable and will effectuate the purposes of this Act"); *National Broad. Co. v. United States*, 319 U.S. 190, 214-15, 226 (1943) (upholding delegation of authority to Federal Communications Commission to exercise radio broadcast licensing power "as public convenience, interest, or necessity requires"). Plaintiff's claim should be dismissed.

## II. PLAINTIFF'S STATUTORY CLAIM FAILS FOR LACK OF JURSIDICTION AND ON THE MERITS.

In addition to its constitutional claims, plaintiff raises a statutory claim, asserting "that Interior's reliance on the CRA and Joint Resolution to nullify the Refuges Rule was *ultra vires* and beyond its authority." Br. 41. But the district court

lacked jurisdiction to review this claim, both because the CRA's judicial-review bar squarely forecloses it and because it amounts to a nonjusticiable challenge to House and Senate rules. Moreover, plaintiff has failed to state a plausible *ultra vires* claim because an agency does not act beyond its statutory authority by complying with an unambiguous congressional command. In any event, as the district court concluded, plaintiff's claim also fails on the merits because it is based on an incorrect reading of the CRA.

### A. Plaintiff's Claim Should Be Dismissed For Lack Of Jursidiction.

#### 1. The CRA Bars Judicial Review Of Plaintiff's Claim.

Plaintiff's claim is foreclosed by the CRA's broad judicial-review bar, which provides that "[n]o determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. This bar applies where, as here, a plaintiff challenges an act of Congress that was expressly enacted pursuant to the CRA. *See* Pub. L. No. 115-20, 131 Stat. at 86 ("[p]roviding for congressional disapproval under chapter 8 of title 5, United States Code"). Plaintiff's claim—that both the House and Senate misread the procedural requirements of the CRA and erroneously applied it in enacting the Joint Resolution—is a challenge to a congressional "determination, finding, action, or omission" under the CRA, and is therefore not "subject to judicial review." 5 U.S.C. § 805.

Both the D.C. Circuit and the Tenth Circuit have broadly interpreted § 805 to foreclose judicial review of claims asserting a violation of the CRA. In *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 229 (D.C. Cir. 2009), the D.C. Circuit declined to review plaintiffs' claim that agency amendments to a forest plan were invalid because the agency allegedly failed to comply with CRA reporting requirements. The court explained that "[t]he language of § 805 is unequivocal and precludes review of this claim—even assuming that the plan amendments qualify as rules subject to the Act in the first place"—because it "denies courts the power to void rules on the basis of agency noncompliance with the Act." *Id.* The D.C. Circuit recently reaffirmed that holding in a decision concluding that § 805 forecloses review of a claim that an agency violated the CRA by publishing a rule in the Federal Register fewer than 60 days before it took effect. *Washington All. of Tech. Workers v. DHS*, 892 F.3d 332, 346 (D.C. Cir. 2018) (affirming dismissal of CRA claim under § 805 and *Montanans for Multiple Use*, 568 F.3d at 229). Similarly, the Tenth Circuit rejected a plaintiff's claim that the agency had violated the CRA, noting that the statute "specifically precludes judicial review of an agency's compliance with its terms." *Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*, 509 F.3d 1259, 1271 n.11 (10th Cir. 2007). Within other circuits, the majority of district courts to decide the question have reached the same conclusion.[6]

---

[6] *See United States v. Carlson*, Crim. No. 12-305, 2013 WL 5125434, at *14-15 (D. Minn. Sept. 12, 2013); *United States v. Ameren Mo.*, No. 4:11-cv-77, 2012 WL 2821928, at *4 (E.D. Mo. July 10, 2012); *New York v. American Elec. Power Serv. Corp.*, Nos. 2:04-

Even under the district court decisions that have adopted a narrower view of the judicial-review bar, plaintiff's claim would be barred. The courts in those decisions have concluded that, while § 805 precludes review of actions or omissions of *Congress*, it does not foreclose review of actions or omissions of an *agency*. *See Tugaw Ranches, LLC v. U.S. Dep't of Interior*, No. 4:18-cv-159, 2019 WL 938865, at *9 (D. Idaho Feb. 25, 2019) (concluding that § 805 precludes judicial review of the actions of "certain groups[]," such as Congress and the President, but not of agencies); *United States v. Southern Ind. Gas & Elec. Co.*, No. IP99-1692-C-M/S, 2002 WL 31427523, at *6 (S.D. Ind. Oct. 24, 2002) (relying on post-enactment legislative history to conclude that judicial-review bar applies to "determinations, findings, and actions" of the Office of Management and Budget and Congress, but not to claims of agency noncompliance); *accord* Answering Br. of Pacific Legal Foundation et al., 27-28 (advancing a similar view). Although the government takes a broader view of the judicial-review bar—one that would also foreclose claims of agency noncompliance, consistent with the plain text of § 805 and with the overwhelming weight of the case

---

cv-1098, 2:05-cv-360, 2006 WL 1331543, at *14 (S.D. Ohio Mar. 21, 2006); *United States v. American Elec. Power Serv. Corp.*, 218 F. Supp. 2d 931, 948-49 (S.D. Ohio 2002); *Texas Sav. & Cmty. Bankers Ass'n v. Federal Hous. Fin. Bd.*, No. A 97 CA 421 SS, 1998 WL 842181, *7 & n.15 (W.D. Tex. June 25, 1998); *see also In re Operation of the Mo. River Sys.*, 363 F. Supp. 2d 1145, 1173 (D. Minn. 2004), *aff'd in part, vacated in part, and remanded on other grounds* 421 F.3d 618 (8th Cir. 2005). *But see Tugaw Ranches, LLC v. U.S. Dep't of Interior*, No. 4:18-cv-159, 2019 WL 938865, at *8-9 (D. Idaho Feb. 25, 2019); *United States v. Reece*, 956 F. Supp. 2d 736, 743-44 (W.D. La. 2013); *United States v. Southern Ind. Gas & Elec. Co.*, No. IP99-1692-C-M/S, 2002 WL 31427523, at *4-6 (S.D. Ind. Oct. 24, 2002).

law—this Court need not take sides on that debate here. Even under a narrow interpretation of § 805 that applies to "determination[s], finding[s], action[s], or omission[s]" of Congress, but not to those of agencies, plaintiff's claim would be barred because it seeks to challenge Congress's compliance with the provisions of the CRA. 5 U.S.C. § 805. Aside from the district court below, no court has permitted judicial review of such a claim.

Plaintiff's reliance (Br. 41 n.12) on *Liesegang v. Secretary of Veterans Affairs*, 312 F.3d 1368, 1373-76 (Fed. Cir. 2002), is misplaced. *Liesegang* did not involve a claim that an agency (much less Congress) violated the CRA, nor did the court address the CRA's judicial-review bar, which no party raised. The petitioners challenged the effective date of a regulation, arguing that a statute mandated that the regulation be effective on the date of issuance. *Id.* at 1370, 1372-73. The agency raised the CRA as a defense, arguing that the CRA required a later effective date, but the court disagreed. *Id.* at 1373 -76. Nothing in *Liesegang* supports the proposition that courts may review a claim that Congress misapplied CRA requirements in enacting a joint resolution of disapproval.[7]

The district court concluded that the judicial-review bar is inapplicable because plaintiff "is not seeking review of action taken *under the CRA*" within the meaning of

---

[7] For similar reasons, the Second Circuit's decision in *NRDC v. Abraham*, 355 F.3d 179 (2d Cir. 2004)—which relies on *Liesegang*—lends no support to plaintiff's argument. In *Abraham*, the agency raised the CRA as a defense, and the court did not discuss the judicial-review provision. *Id.* at 201-02.

§ 805, but rather that "[Interior], at the behest of Congress, acted *ultra vires* in taking action beyond the authority provided by the CRA." Tab 3, at 23 n.89 (first emphasis added); *see also* Pl. Br. 41 n.12 ("'[T]he judicial review provision is irrelevant here because the Center's argument is that the Joint Resolution was not enacted *under the CRA*."); 5 U.S.C. § 805 ("No determination, finding, action, or omission *under this chapter* shall be subject to judicial review.") (emphasis added). But the Joint Resolution was explicitly enacted pursuant to the CRA, as Congress made clear in describing it as a law "[p]roviding for congressional disapproval under chapter 8 of title 5 [of the] United States Code." Pub. L. No. 115-20, 131 Stat. at 86. Therefore, the Joint Resolution is precisely the sort of "determination, finding, action, or omission under this chapter" that Congress protected from review. 5 U.S.C. § 805.

Indeed, in *Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32 (1991), the Supreme Court held that Congress had "spoken clearly and directly" in depriving courts of "'jurisdiction to affect by injunction or otherwise the issuance or enforcement of any [Board of Governors of the Federal Reserve System] notice or order *under this section*,'" notwithstanding plaintiff's claim that the Board proceeding at issue was predicated on a regulation that allegedly "exceeded the agency's statutory authority." *Id.* at 43-44 (quoting 12 U.S.C. § 1818(i)(1) (1988 ed., Supp. II)) (alteration in original, emphasis added and omitted). So too here, the Joint Resolution was enacted "under" the CRA, notwithstanding plaintiff's claim that the Joint Resolution was outside the scope of the provisions of the CRA.

Plaintiff's contrary view would undermine the CRA's judicial-review bar by permitting plaintiffs and courts to second-guess Congress's application of any provision of the CRA simply by claiming that a joint resolution is predicated on a violation of the CRA. That would be an odd result, particularly given that the CRA governs Congress's own procedures, which it is constitutionally entitled to determine. *See* U.S. Const., art. I, § 5, cl. 2 (allowing each House of Congress to "determine the Rules of its Proceedings"); *infra* pp. 39-42. Congress did not intend to allow plaintiffs to circumvent the judicial-review bar in this manner.

As the district court noted (Tab 3, at 23 n.89), plaintiff has not argued that the judicial-review bar is overcome under *Leedom v. Kyne*, 358 U.S. 184 (1958), which sets forth an "extremely narrow exception" for *ultra vires* claims and requires a violation of "clear and mandatory statutory language," *In re Border Infrastructure Env'l Litig.*, 915 F.3d 1213, 1221 n.7 (9th Cir. 2019); *accord MCorp Fin.*, 502 U.S. at 42-44; *Staacke v. U.S. Sec'y of Labor*, 841 F.2d 278, 281-82 (9th Cir. 1988). As discussed below, plaintiff's *ultra vires* claim cannot satisfy that standard. *See infra* p. 43.

## 2. This Court Lacks Jurisdiction To Review Plaintiff's Challenge To House And Senate Rules.

Plaintiff's statutory claim is nonjusticiable for the independent reason that it amounts to an as-applied challenge to House and Senate rules, which are constitutionally committed to each House of Congress to "determine." U.S. Const. art. I, § 5, cl. 2 ("Each House may determine the Rules of its Proceedings . . . ."). A

long line of precedent confirms that judicial intrusion into those rules is forbidden in all but the rarest of circumstances, which are inapplicable here.

"The constitution empowers each house to determine its rules of proceedings." *United States v. Ballin*, 144 U.S. 1, 5 (1892). This power is "absolute and beyond the challenge of any other body or tribunal," subject only to narrow limitations: A House of Congress "may not by its rules ignore constitutional restraints or violate fundamental rights, and there should be a reasonable relation between the mode or method of proceeding established by the rule and the result which is sought to be attained." *Id.*; *accord NLRB v. Noel Canning*, 573 U.S. 513, 550-51 (2014).

Plaintiff's statutory claim falls squarely within this "absolute," unreviewable authority of Congress, because it alleges that Congress misapplied the rules for its proceedings, as set forth in the CRA. *Ballin*, 144 U.S. at 5. Indeed, Congress explained that the disapproval process set forth in § 802 is "an exercise of the rulemaking power of the Senate and House of Representatives, respectively, and as such it is deemed a part of the rules of each House, respectively." 5 U.S.C. § 802(g). And either House may "change the rules . . . at any time." *Id.* As this Court has held, a challenge "based on the asserted failure of Congress to comply with its own procedural rules" is "a non-justiciable political question" that is "beyond [this Court's] power to review." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1171-72 (9th Cir. 2007) (declining to review claim that Congress, by not holding a hearing on legislation, failed to comply with its own procedural rules). Plaintiff's claim does not fall within

the narrow exceptions for claims based on the violation of the Constitution or a fundamental right, or for challenges to the reasonableness of the rules of proceedings.

The district court nevertheless held that it may review plaintiff's statutory claim, on the theory that plaintiff does not challenge "the application of an internal rule of Congress," but rather "challenge[s] . . . agency action taken pursuant to an official act of Congress." Tab 3, at 23 n.89; *see also id.* ("[Plaintiff]'s claims do not appear or purport to be challenging Congress's compliance with its own rules."). That characterization ignores the underlying basis for plaintiff's claim that "Interior's reliance on the CRA and Joint Resolution" was improper. Br. 41. Ultimately, plaintiff's claim is that the Joint Resolution is invalid because Congress misapplied the rules of proceedings set forth in the CRA, and therefore the Joint Resolution is not properly considered "an act of Congress under the CRA" at all. Pl. Br. 32; *see also* Pl. Br. 16 ("[T]he Refuges Rule was not eligible for disapproval under the CRA, and thus Congress did not actually enact the Joint Resolution pursuant to the CRA."); Tab 4, at 18 ("[T]he Refuges Rule was not eligible for disapproval under Section 801(d)(1) in the new session of Congress."). Such an attack on Congress's interpretation and application of its rules and proceedings is not justiciable. *See Consejo*, 482 F.3d at 1171-72 (declining to review challenge "based on the asserted failure of Congress to comply with its own procedural rules"); *Metzenbaum v. FERC*, 675 F.2d 1282, 1288 (D.C. Cir. 1982) (per curiam) ("To invalidate Pub. L. No. 97-93 on the ground that it was enacted in violation of House rules would be to declare as erroneous the understanding of the House of

Representatives of rules of its own making, binding upon it only by its own choice. We must assume that the House acted in the belief that its conduct was permitted by its rules, and deference rather than disrespect is due that judgment.").

Plaintiff's argument is no different from a claim that a statute is invalid because Congress failed to comply with its own internal rules of proceedings, or that Congress improperly amended its rules of proceedings. At any time, the Senate could amend its own rules relating to the process by which it considers all legislation, or all hunting legislation, or all legislation related to recently issued agency rules—including by allowing for expedited consideration of agency rules, as the CRA permits. *See Ballin*, 144 U.S. at 5 ("The power to make rules is not one which once exercised is exhausted. It is a continuous power, always subject to be exercised by the house."). And even without the Congressional Review Act, Congress could have, at any time, passed a law that both (1) repealed the Refuges Rule, and (2) prohibited any substantially similar rules from being issued by the Department of the Interior. The fact that such a law (at least under current Senate rules) might have been subject to a filibuster is, of course, of no constitutional significance, as the Senate filibuster is not mentioned in, let alone required by, the Constitution. What plaintiff challenges, therefore, is not the substance of the Joint Resolution, but rather the process by which Congress considered the action. Such a challenge is "not subject to judicial review." *Consejo*, 482 F.3d at 1172.

## B.    Plaintiff Fails To State A Valid *Ultra Vires* Claim.

This Court may affirm the dismissal of plaintiff's statutory claim for the independent reason that even if Congress misinterpreted the CRA, plaintiff still has failed to state a claim that Interior acted beyond its statutory authority.  Whether brought under the APA or as an equitable claim, it cannot be *ultra vires* for Interior to comply with an unambiguous congressional command.  Contrary to the district court's conclusion, plaintiff does not "challenge[] the fundamental authority of the *agency* to take the action at issue," Tab 3, at 23 n.89 (emphasis added), but rather challenges the authority of *Congress* to issue the Joint Resolution under the CRA.

The district court construed plaintiff's statutory claim as an *ultra vires* claim that exists outside the APA.  *See* Tab 3, at 23 (recognizing *ultra vires* claim but holding that plaintiff failed to state a claim for relief under the APA).  But to state such a claim, at a minimum, plaintiff must allege that an agency has violated a "clear and mandatory" statutory provision.  *Leedom*, 358 U.S. at 188; *accord In re Border Infrastructure Envt'l Litig.*, 915 F.3d at 1221 n.7; *Pacific Mar. Ass'n v. NLRB*, 827 F.3d 1203, 1208 (9th Cir. 2016); *Staacke*, 841 F.2d at 281-82.  Plaintiff does not allege that Interior violated a statutory duty, much less a "clear and mandatory" directive.  *Leedom*, 358 U.S. at 188.  Indeed, plaintiff does not even attempt to argue that this standard is satisfied, and the district court therefore did not address it.  *See* Tab 3, at 23 n.89 ("[Plaintiff] did not make any assertions with regard to [the *Leedom*] exception.").

Plaintiff does not challenge the district court's conclusion that plaintiff fails to state a claim for relief under the APA. *See* Tab 3, at 23 ("[Plaintiff] does not identify a particular basis for finding the CRA invalid under the APA, nor provide any specific support for its contention that an APA violation has occurred . . . ."); *see also id.* at 27 n.95. In any event, to the extent that plaintiff's *ultra vires* theory relies on the APA, Interior cannot act "in excess of statutory . . . authority" by following the Joint Resolution. 5 U.S.C. § 706(2)(C).

### C.   Plaintiff's Claim Misunderstands Relevant CRA Provisions.

**1.** The district court correctly held that plaintiff's statutory claim fails on the merits. Plaintiff contends that the Refuges Rule was not eligible for disapproval under the CRA, and thus the Joint Resolution is an invalid exercise of CRA procedures. In plaintiff's view, § 808 exempted the Refuges Rule from the reporting requirements set forth in § 801, and therefore the rule was not eligible for disapproval under the carryover provision of § 801(d)(1) because its report was not "submitted in accordance with [§ 801](a)(1)(A)." 5 U.S.C. § 801(d)(1). Plaintiff acknowledges, however, that Congress may validly disapprove a § 808 rule if it does so during the same session of Congress in which the agency submits a CRA report. Plaintiff's statutory argument rests on a misunderstanding of the effect of § 808, as well as the carryover provision of § 801(d)(1).

**a.** Section 808 of the CRA, titled "[e]ffective date of certain rules," provides that "[n]otwithstanding section 801," certain rules "shall take effect at such time as the

44

Federal agency promulgating the rule determines." 5 U.S.C. § 808. Thus, while the effective date for most rules is governed by the provisions of § 801, rules falling within the exception of § 808 become effective on the date that "the Federal agency promulgating the rule determines." *Id.* As relevant here, this provision applies to "any rule that establishes, modifies, opens, closes, or conducts a regulatory program for a commercial, recreational, or subsistence activity related to hunting, fishing, or camping." *Id.*

The district court correctly rejected plaintiff's "sweeping" view that § 808 rules are exempt from the CRA's reporting requirements, and instead held that "the language of the CRA indicates that § 808 merely alters the effective date" of these rules. Tab 3, at 26. "By its own words the provision allows the agency to determine the date that the regulation 'shall take effect,'" the court explained, "thus withdrawing [the regulation] from the timeline established by §§ 801(a)(3)-(4)." *Id.* Indeed, the title of § 808 is "[e]ffective date of certain rules." *See Yates v. United States*, 135 S. Ct. 1074, 1083 (2015) (considering section titles as a "[f]amiliar interpretive guide[]" when interpreting statutory language); *id.* at 1090 (Alito, J., concurring in the judgment) ("Titles can be useful devices to resolve doubt about the meaning of a statute.") (quotation marks omitted).

Plaintiff nevertheless contends (Br. 34-36) that because § 808 rules go into effect regardless of when a report is submitted to Congress, the agency is not required to submit a report under § 801(a)(1)(A). In plaintiff's view, § 801(a)(1)(A) "only

requires the submission of a Congressional report when one is necessary '[b]efore a rule can take effect,'" and thus "does not require the submission of a report in any case where an agency's rule takes effect irrespective of this restriction." Br. 35 (quoting 5 U.S.C. § 801(a)(1)(A)) (emphases omitted). The district court correctly rejected this view. Tab 3, at 26-27. Although a CRA report is not required before a § 808 rule goes into effect, an agency still must comply with the reporting requirements of § 801(a)(1)(A). As the district court explained, "§ 801(a)(1)(A) says that an agency 'shall submit' a CRA report when it issues 'a rule,' and specifies that the report include certain information about 'the rule.'" *Id.* (alterations omitted).

Although a § 808 rule may take effect immediately, the agency's submission of the CRA report plays an important role by notifying Congress of the rule and setting into motion the process for considering whether to disapprove the rule. *See, e.g.*, 5 U.S.C. § 801(a)(2)(A) (requiring Comptroller General to provide a report on major rules "by the end of 15 calendar days after the submission [of the CRA report] or publication" of the rule in the Federal Register, whichever is later); *id.* § 802(c) (allowing Senators to file a petition to discharge committee from consideration of a joint resolution 20 days from the "submission or publication date"). Plaintiff's view that no report is required for § 808 rules would transform that provision into a categorical exemption from the CRA, rather than merely a provision that governs the date on which a rule "shall take effect."

Plaintiff claims (Br. 39) that it does not argue that § 808 "exempt[s] rules relate[d] to fishing and hunting from Congressional review altogether," but only from the requirement to submit a report. In its view, an agency is not required to submit a CRA report for § 808 rules, but if an agency nonetheless chooses to submit one, Congress may use the procedures set forth in § 802 to disapprove a rule that was submitted in the same session of Congress. Br. 39-40. Plaintiff purports to craft an exception for rules—such as the Refuges Rule—that were submitted in a prior session of Congress, because those rules are governed by the carryover provision. 5 U.S.C. § 801(d)(1). Plaintiff's view of the statute is a strained effort to avoid an interpretation that exempts § 808 rules from CRA review altogether. Plaintiff fails to explain why agencies would routinely submit CRA reports for § 808 rules even if none were required, and plaintiff thus fails to identify any meaningful category of § 808 rules that would be subject to disapproval under plaintiff's reading of the statute. Under plaintiff's interpretation, § 808—a provision titled "[e]ffective date of certain rules"— would operate to entirely withdraw categories of agency rulemaking from the reach of the CRA, without explicitly saying so.

Statutory context confirms that Congress knew how to exempt certain rules from the CRA's reporting requirements when it wished to do so. Section 807—titled "[e]xemption for monetary policy"—provides that "[n]othing in this chapter shall apply" to certain rules concerning monetary policy. 5 U.S.C. § 807. By contrast, § 808 is narrowly focused on the date on which certain rules "shall take effect." *Id.*

§ 808. "Had Congress intended to" exempt all rules in § 808 from the CRA's reporting requirements, "it presumably would have done so expressly as it did in the immediately" preceding section § 807. *Sandoz Inc. v. Amgen Inc.*, 137 S. Ct. 1664, 1677 (2017) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

**b.** In any event, even if plaintiff were correct that § 808 rules are exempt from the reporting provision of § 801(a)(1)(A), the Refuges Rule was eligible for disapproval under the carryover provision because it is a "rule *for which a report was submitted* in accordance with subsection (a)(1)(A)" within the relevant timeframe. 5 U.S.C. § 801(d)(1) (emphasis added); *see also* Tab 3, at 27. Regardless of whether § 801(a)(1)(A) mandated the report for the Refuges Rule, Interior clearly submitted the report pursuant to this provision, which includes details regarding who receives a report (each House of Congress and the Comptroller General) and the contents of the report (a copy of the rule, a "concise general statement relating to the rule," a determination regarding whether it is a "major rule," and the proposed effective date). 5 U.S.C. § 801(a)(1)(A). Indeed, Congress understood that Interior submitted the Refuges Rule "pursuant to 5 U.S.C. 801(a)(1)(A)." 162 Cong. Rec. H6169.

Plaintiff responds that the carryover provision is inapplicable because a report is "'submitted *in accordance with subsection [801](a)(1)(A)*'" only if it is "required" by subsection 801(a)(1)(A). Br. 36 (quoting 5 U.S.C. § 801(d)(1)). But "in accordance with" simply means that the submission "accords" with, or is in "agreement" with, the provisions of § 801(a)(1)(A). *E.g.*, *Webster's Third International Dictionary* 12 (1993)

(defining "accordance" as "agreement, accord"). That view is consistent with the use of the term in plaintiff's cited authorities. *See, e.g.*, *Koons v. United States*, 138 S. Ct. 1783, 1789-90 (2018) ("[A] court imposes a sentence 'in accordance with the [sentencing] guidelines' when it follows the Guidelines."); *Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, 138 S. Ct. 1865, 1872-73 (2018) (stating that at common law, "[f]oreign law 'had to be raised in the pleadings' and proved 'in accordance with the rules of evidence'") (quoting 9A Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 2441 (3d ed. 2008)). Indeed, plaintiff's strict reading of this phrase cannot be reconciled with another provision of the CRA, which provides that a Senate vote on a joint resolution shall occur "immediately following the conclusion of the debate on a joint resolution . . . , and a single quorum call at the conclusion of the debate *if requested in accordance with* the rules of the Senate." 5 U.S.C. § 802(d)(3) (emphasis added). In this context, "in accordance with" describes a procedure that may be "requested" under, and is consistent with—but is not required by—Senate rules. *Id.* The same meaning naturally applies to the identical phrase in § 801(a)(1)(A). *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 86 (2006) ("Generally, identical words used in different parts of the same statute are . . . presumed to have the same meaning.") (quotation marks omitted).

Plaintiff argues (Br. 37-38) that the district court's interpretation of "in accordance with" is the same as "referred to," which Congress used elsewhere in the CRA to describe "the report referred to in Section 801(a)(1)(A)" and "the period

referred to in Section 801(d)(1)," and urges that Congress must have intended these phrases to have different meanings. But no "canon of interpretation . . . forbids interpreting different words used in different parts of the same statute to mean roughly the same thing." *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 540 (2013).

In sum, the district court correctly held that plaintiff's statutory claim lacks merit because it is based on a misunderstanding of the provisions of the CRA. Additionally, plaintiff's claim also was subject to dismissal because it is foreclosed by the CRA's judicial-review bar, because it is a nonjusticiable challenge to House and Senate rules, and because plaintiff has failed to state an *ultra vires* claim.

# CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

JOSEPH H. HUNT
*Assistant Attorney General*

BRYAN SCHRODER
*United States Attorney*

MICHAEL S. RAAB

*s/ Tara S. Morrissey*
TARA S. MORRISSEY
*Attorneys, Appellate Staff*
*Civil Division, Room 7261*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 353-9018*
*Tara.S.Morrissey@usdoj.gov*

March 2019

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, federal appellees state that they know of no related case pending in this Court.

*s/ Tara S. Morrissey*
Tara S. Morrissey

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Circuit Rule 32-1 because it contains 13,098 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Tara S. Morrissey*
Tara S. Morrissey

**CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2019, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/ Tara S. Morrissey*
Tara S. Morrissey

# ADDENDUM

# TABLE OF CONTENTS

5 U.S.C. § 801 ............................................................................. A1

5 U.S.C. § 802 ............................................................................. A5

5 U.S.C. § 803 ............................................................................. A8

5 U.S.C. § 804 ............................................................................. A8

5 U.S.C. § 805 ............................................................................. A9

5 U.S.C. § 806 ............................................................................. A9

5 U.S.C. § 807 ............................................................................. A9

5 U.S.C. § 808 ............................................................................. A9

Pub. L. No. 115-20, 131 Stat. 86 (Apr. 3, 2017) (Joint Resolution) ........................... A10

## 5 U.S.C. §§ 801-808

## § 801.  Congressional review

**(a)(1)(A)** Before a rule can take effect, the Federal agency promulgating such rule shall submit to each House of the Congress and to the Comptroller General a report containing—

>**(i)** a copy of the rule;

>**(ii)** a concise general statement relating to the rule, including whether it is a major rule; and

>**(iii)** the proposed effective date of the rule.

**(B)** On the date of the submission of the report under subparagraph (A), the Federal agency promulgating the rule shall submit to the Comptroller General and make available to each House of Congress—

>**(i)** a complete copy of the cost-benefit analysis of the rule, if any;

>**(ii)** the agency's actions relevant to sections 603, 604, 605, 607, and 609;

>**(iii)** the agency's actions relevant to sections 202, 203, 204, and 205 of the Unfunded Mandates Reform Act of 1995; and

>**(iv)** any other relevant information or requirements under any other Act and any relevant Executive orders.

**(C)** Upon receipt of a report submitted under subparagraph (A), each House shall provide copies of the report to the chairman and ranking member of each standing committee with jurisdiction under the rules of the House of Representatives or the Senate to report a bill to amend the provision of law under which the rule is issued.

**(2)(A)** The Comptroller General shall provide a report on each major rule to the committees of jurisdiction in each House of the Congress by the end of 15 calendar days after the submission or publication date as provided in section 802(b)(2). The report of the Comptroller General shall include an assessment of the agency's compliance with procedural steps required by paragraph (1)(B).

**(B)** Federal agencies shall cooperate with the Comptroller General by providing information relevant to the Comptroller General's report under subparagraph (A).

**(3)** A major rule relating to a report submitted under paragraph (1) shall take effect on the latest of—

>**(A)** the later of the date occurring 60 days after the date on which—

>>**(i)** the Congress receives the report submitted under paragraph (1); or

>>**(ii)** the rule is published in the Federal Register, if so published;

**(B)** if the Congress passes a joint resolution of disapproval described in section 802 relating to the rule, and the President signs a veto of such resolution, the earlier date—

    **(i)** on which either House of Congress votes and fails to override the veto of the President; or

    **(ii)** occurring 30 session days after the date on which the Congress received the veto and objections of the President; or

**(C)** the date the rule would have otherwise taken effect, if not for this section (unless a joint resolution of disapproval under section 802 is enacted).

**(4)** Except for a major rule, a rule shall take effect as otherwise provided by law after submission to Congress under paragraph (1).

**(5)** Notwithstanding paragraph (3), the effective date of a rule shall not be delayed by operation of this chapter beyond the date on which either House of Congress votes to reject a joint resolution of disapproval under section 802.

**(b)(1)** A rule shall not take effect (or continue), if the Congress enacts a joint resolution of disapproval, described under section 802, of the rule.

**(2)** A rule that does not take effect (or does not continue) under paragraph (1) may not be reissued in substantially the same form, and a new rule that is substantially the same as such a rule may not be issued, unless the reissued or new rule is specifically authorized by a law enacted after the date of the joint resolution disapproving the original rule.

**(c)(1)** Notwithstanding any other provision of this section (except subject to paragraph (3)), a rule that would not take effect by reason of subsection (a)(3) may take effect, if the President makes a determination under paragraph (2) and submits written notice of such determination to the Congress.

**(2)** Paragraph (1) applies to a determination made by the President by Executive order that the rule should take effect because such rule is—

**(A)** necessary because of an imminent threat to health or safety or other emergency;

**(B)** necessary for the enforcement of criminal laws;

**(C)** necessary for national security; or

**(D)** issued pursuant to any statute implementing an international trade agreement.

**(3)** An exercise by the President of the authority under this subsection shall have no effect on the procedures under section 802 or the effect of a joint resolution of disapproval under this section.

**(d)(1)** In addition to the opportunity for review otherwise provided under this chapter, in the case of any rule for which a report was submitted in accordance with subsection (a)(1)(A) during the period beginning on the date occurring—

    **(A)** in the case of the Senate, 60 session days, or

    **(B)** in the case of the House of Representatives, 60 legislative days,

before the date the Congress adjourns a session of Congress through the date on which the same or succeeding Congress first convenes its next session, section 802 shall apply to such rule in the succeeding session of Congress.

**(2)(A)** In applying section 802 for purposes of such additional review, a rule described under paragraph (1) shall be treated as though—

    **(i)** such rule were published in the Federal Register (as a rule that shall take effect) on—

        **(I)** in the case of the Senate, the 15th session day, or

        **(II)** in the case of the House of Representatives, the 15th legislative day,

after the succeeding session of Congress first convenes; and

    **(ii)** a report on such rule were submitted to Congress under subsection (a)(1) on such date.

**(B)** Nothing in this paragraph shall be construed to affect the requirement under subsection (a)(1) that a report shall be submitted to Congress before a rule can take effect.

**(3)** A rule described under paragraph (1) shall take effect as otherwise provided by law (including other subsections of this section).

**(e)(1)** For purposes of this subsection, section 802 shall also apply to any major rule promulgated between March 1, 1996, and the date of the enactment of this chapter.

**(2)** In applying section 802 for purposes of Congressional review, a rule described under paragraph (1) shall be treated as though—

    **(A)** such rule were published in the Federal Register on the date of enactment of this chapter; and

    **(B)** a report on such rule were submitted to Congress under subsection (a)(1) on such date.

**(3)** The effectiveness of a rule described under paragraph (1) shall be as otherwise provided by law, unless the rule is made of no force or effect under section 802.

**(f)** Any rule that takes effect and later is made of no force or effect by enactment of a joint resolution under section 802 shall be treated as though such rule had never taken effect.

**(g)** If the Congress does not enact a joint resolution of disapproval under section 802 respecting a rule, no court or agency may infer any intent of the Congress from any action or inaction of the Congress with regard to such rule, related statute, or joint resolution of disapproval.

## § 802. Congressional disapproval procedure

**(a)** For purposes of this section, the term "joint resolution" means only a joint resolution introduced in the period beginning on the date on which the report referred to in section 801(a)(1)(A) is received by Congress and ending 60 days thereafter (excluding days either House of Congress is adjourned for more than 3 days during a session of Congress), the matter after the resolving clause of which is as follows: "That Congress disapproves the rule submitted by the _____ relating to _____, and such rule shall have no force or effect." (The blank spaces being appropriately filled in).

**(b)(1)** A joint resolution described in subsection (a) shall be referred to the committees in each House of Congress with jurisdiction.

**(2)** For purposes of this section, the term "submission or publication date" means the later of the date on which—

> **(A)** the Congress receives the report submitted under section 801(a)(1); or

> **(B)** the rule is published in the Federal Register, if so published.

**(c)** In the Senate, if the committee to which is referred a joint resolution described in subsection (a) has not reported such joint resolution (or an identical joint resolution) at the end of 20 calendar days after the submission or publication date defined under subsection (b)(2), such committee may be discharged from further consideration of such joint resolution upon a petition supported in writing by 30 Members of the Senate, and such joint resolution shall be placed on the calendar.

**(d)(1)** In the Senate, when the committee to which a joint resolution is referred has reported, or when a committee is discharged (under subsection (c)) from further consideration of a joint resolution described in subsection (a), it is at any time thereafter in order (even though a previous motion to the same effect has been disagreed to) for a motion to proceed to the consideration of the joint resolution, and all points of order against the joint resolution (and against consideration of the joint resolution) are waived. The motion is not subject to amendment, or to a motion to postpone, or to a motion to proceed to the consideration of other business. A motion to reconsider the vote by which the motion is agreed to or disagreed to shall not be in order. If a motion to proceed to the consideration of the joint resolution is agreed to, the joint resolution shall remain the unfinished business of the Senate until disposed of.

**(2)** In the Senate, debate on the joint resolution, and on all debatable motions and appeals in connection therewith, shall be limited to not more than 10 hours, which shall be divided equally between those favoring and those opposing the joint resolution. A motion further to limit debate is in order and not debatable. An

amendment to, or a motion to postpone, or a motion to proceed to the consideration of other business, or a motion to recommit the joint resolution is not in order.

**(3)** In the Senate, immediately following the conclusion of the debate on a joint resolution described in subsection (a), and a single quorum call at the conclusion of the debate if requested in accordance with the rules of the Senate, the vote on final passage of the joint resolution shall occur.

**(4)** Appeals from the decisions of the Chair relating to the application of the rules of the Senate to the procedure relating to a joint resolution described in subsection (a) shall be decided without debate.

**(e)** In the Senate the procedure specified in subsection (c) or (d) shall not apply to the consideration of a joint resolution respecting a rule—

**(1)** after the expiration of the 60 session days beginning with the applicable submission or publication date, or

**(2)** if the report under section 801(a)(1)(A) was submitted during the period referred to in section 801(d)(1), after the expiration of the 60 session days beginning on the 15th session day after the succeeding session of Congress first convenes.

**(f)** If, before the passage by one House of a joint resolution of that House described in subsection (a), that House receives from the other House a joint resolution described in subsection (a), then the following procedures shall apply:

**(1)** The joint resolution of the other House shall not be referred to a committee.

**(2)** With respect to a joint resolution described in subsection (a) of the House receiving the joint resolution—

**(A)** the procedure in that House shall be the same as if no joint resolution had been received from the other House; but

**(B)** the vote on final passage shall be on the joint resolution of the other House.

**(g)** This section is enacted by Congress—

**(1)** as an exercise of the rulemaking power of the Senate and House of Representatives, respectively, and as such it is deemed a part of the rules of each House, respectively, but applicable only with respect to the procedure to be followed in that House in the case of a joint resolution described in subsection (a), and it supersedes other rules only to the extent that it is inconsistent with such rules; and

**(2)** with full recognition of the constitutional right of either House to change the rules (so far as relating to the procedure of that House) at any time, in the same manner, and to the same extent as in the case of any other rule of that House.

## § 803. Special rule on statutory, regulatory, and judicial deadlines

**(a)** In the case of any deadline for, relating to, or involving any rule which does not take effect (or the effectiveness of which is terminated) because of enactment of a joint resolution under section 802, that deadline is extended until the date 1 year after the date of enactment of the joint resolution. Nothing in this subsection shall be construed to affect a deadline merely by reason of the postponement of a rule's effective date under section 801(a).

**(b)** The term "deadline" means any date certain for fulfilling any obligation or exercising any authority established by or under any Federal statute or regulation, or by or under any court order implementing any Federal statute or regulation.

## § 804. Definitions

For purposes of this chapter—

**(1)** The term "Federal agency" means any agency as that term is defined in section 551(1).

**(2)** The term "major rule" means any rule that the Administrator of the Office of Information and Regulatory Affairs of the Office of Management and Budget finds has resulted in or is likely to result in—

    **(A)** an annual effect on the economy of $100,000,000 or more;

    **(B)** a major increase in costs or prices for consumers, individual industries, Federal, State, or local government agencies, or geographic regions; or

    **(C)** significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of United States-based enterprises to compete with foreign-based enterprises in domestic and export markets.

The term does not include any rule promulgated under the Telecommunications Act of 1996 and the amendments made by that Act.

**(3)** The term "rule" has the meaning given such term in section 551, except that such term does not include—

    **(A)** any rule of particular applicability, including a rule that approves or prescribes for the future rates, wages, prices, services, or allowances therefor, corporate or financial structures, reorganizations, mergers, or acquisitions thereof, or accounting practices or disclosures bearing on any of the foregoing;

    **(B)** any rule relating to agency management or personnel; or

    **(C)** any rule of agency organization, procedure, or practice that does not substantially affect the rights or obligations of non-agency parties.

## § 805. Judicial review

No determination, finding, action, or omission under this chapter shall be subject to judicial review.

## § 806. Applicability; severability

**(a)** This chapter shall apply notwithstanding any other provision of law.

**(b)** If any provision of this chapter or the application of any provision of this chapter to any person or circumstance, is held invalid, the application of such provision to other persons or circumstances, and the remainder of this chapter, shall not be affected thereby.

## § 807. Exemption for monetary policy

Nothing in this chapter shall apply to rules that concern monetary policy proposed or implemented by the Board of Governors of the Federal Reserve System or the Federal Open Market Committee.

## § 808. Effective date of certain rules

Notwithstanding section 801—

**(1)** any rule that establishes, modifies, opens, closes, or conducts a regulatory program for a commercial, recreational, or subsistence activity related to hunting, fishing, or camping, or

**(2)** any rule which an agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rule issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest,

shall take effect at such time as the Federal agency promulgating the rule determines.

Public Law 115–23
115th Congress

## Joint Resolution

Providing for congressional disapproval under chapter 8 of title 5, United States Code, of the final rule submitted by Secretary of Health and Human Services relating to compliance with title X requirements by project recipients in selecting subrecipients.

Apr. 13, 2017

[H.J. Res. 43]

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That Congress disapproves the rule submitted by the Secretary of Health and Human Services relating to compliance with title X requirements by project recipients in selecting subrecipients (81 Fed. Reg. 91852; December 19, 2016), and such rule shall have no force or effect.

Approved April 13, 2017.

LEGISLATIVE HISTORY—H.J. Res. 43:

CONGRESSIONAL RECORD, Vol. 163 (2017):
    Feb. 16, considered and passed House.
    Mar. 30, considered and passed Senate.

○